LIZZIE MILLER, ADMINISTRATRIX OF THE ESTATE OF MACK BUSTER MILLER, DECEASED v. CRAWFORD MONROE ENZOR

No. 7313SC19

(Filed 14 March 1973)

1. Automobiles §§ 50, 69— striking bicyclist — duty to keep vehicle under control — sufficiency of evidence to be submitted to jury

In a wrongful death action plaintiff's evidence was sufficient to take the case to the jury on the question of whether defendant main-

Miller v. Enzor

tained his vehicle under proper control where the evidence tended to show that defendant pulled into the left lane of a two-lane road in order to pass a vehicle traveling in the same direction, that defendant's car left the traveled portion of the road for a short distance, struck two bicycles traveling in the opposite direction but located about two or three feet onto the shoulder of the road and killed plaintiff's intestate who was riding one of the bicycles.

2. **Automobiles §§ 50, 69— striking bicyclist — duty to maintain proper lookout — sufficiency of evidence to be submitted to jury**

Evidence in a wrongful death action required the jury to pass upon the question of whether defendant was keeping a proper lookout where it tended to show that there was nothing to obstruct defendant's vision, that visibility was possible only moments before the collision for up to 200 yards, that defendant had his headlights on, yet failed to see four boys on two bicycles at any time before the collision.

3. **Automobiles §§ 85, 88— cyclist on highway without lights at night — jury question of contributory negligence**

In a wrongful death case if deceased was riding his bicycle, without lights, at night upon a public highway, he was guilty of negligence; however, whether that negligence was a proximate cause of his death if the fatal collision in fact occurred while he was completely away from the traveled portion of the highway was a question for the jury.

APPEAL by plaintiff from *Bailey, Judge,* 24 April 1972 Civil Session of Superior Court held in COLUMBUS County.

Wrongful death action to recover for the death of plaintiff's intestate, a 16-year-old boy, who was killed 5 April 1969 when struck by an automobile driven by defendant while the deceased was riding a bicycle upon or along the shoulder of N. C. Highway No. 904 in Columbus County.

Defendant moved for a directed verdict at the conclusion of plaintiff's evidence and renewed his motion at the conclusion of all the evidence. The motion was denied and issues of negligence, contributory negligence and damages were submitted to the jury. After deliberation, the jury returned to the courtroom and advised that agreement had been reached on the issue of defendant's negligence, but that agreement could not be reached on the remaining issues. The court thereupon withdrew a juror and declared a mistrial. The court then entered judgment granting defendant's motion for a directed verdict, stating as the grounds therefor that the evidence was insufficient to show actionable negligence; and even if sufficient for this purpose, the plaintiff's evidence established the contributory negligence of her intestate as a matter of law.

*Williamson & Walton by Edward L. Williamson and Benton H. Walton III for plaintiff appellant.*

*Marshall, Williams, Gorham & Brawley by A. Dumay Gorham, Jr., for defendant appellee.*

GRAHAM, Judge.

The evidence offered by plaintiff is conflicting in many respects. However, on a motion by a defendant for a directed verdict, the plaintiff's evidence must be taken in the light most favorable to him and he is entitled to the benefit of all reasonable inferences which may be drawn therefrom. *Dawson v. Jennette,* 278 N.C. 438, 180 S.E. 2d 121; *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47.

[1] The testimony of David Earl Simmons, when considered in the light most favorable to the plaintiff, tends to show the following: At about dusk on the afternoon of 5 April 1969, Simmons, deceased, and two other boys left Sam Herring's store to go to Joyce Woodell's house, about 200 yards away. It was raining a little but they could see from the store to the house. Simmons and one boy rode on one bicycle and deceased and the other boy followed on a second bicycle. The bicycles were not equipped with lights. The boys rode on the paved surface of the right side of the two-lane road until defendant's car, which was approaching them from the opposite direction, pulled into that lane to pass a car in front of it. Simmons testified that at that point " . . . we got on the shoulder of the road, about two or three foot." Defendant's car left the traveled portion of the road for a short distance, struck both bicycles, and caused the death of plaintiff's intestate.

We find this evidence sufficient to take the case to the jury on the question of whether defendant maintained his vehicle under proper control. *Greene v. Nichols,* 274 N.C. 18, 161 S.E. 2d 521. Indeed, defendant concedes that "[i]f, in fact, the Defendant's vehicle left the paved portion of the road 'for no apparent cause' then it would seem to follow that the evidence makes out a *prima facie* case of negligence on the part of the Defendant, ENZOR."

[2] Moreover, we are of the opinion that the evidence required the jury to pass upon the question of whether defendant was keeping a proper lookout. Defendant was called by plaintiff

---

---

as an adverse witness and testified: "At the time I pulled into the left lane to go around her [the car preceding] I never did see either one of the boys, and in particular the young boy here who was killed. I never did see him. I didn't see him on the highway. I didn't see him on the shoulder. In fact, I never saw him. . . . There was nothing in my way to obstruct my view. As for your question if there had been anything there in the road, I would have seen it, well, I didn't see it. I never saw the bicycle. I never saw either bicycle. I never saw any person, this little boy or anyone else, on the road. I didn't see them on the road. I heard something. I heard a sound like I had struck something. As for describing what it was like, well, it broke the windshield. . . . "

A motorist is charged with having seen what he could have seen had he looked. *Dawson v. Jennette, supra.* His liability to one injured in a collision with his vehicle is determined as it would have been had he looked, observed the prevailing conditions and continued to drive as he did. *Raper v. Byrum,* 265 N.C. 269, 144 S.E. 2d 38. There was nothing to obstruct defendant's vision. There was some evidence which tended to show that visibility was possible only moments before the collision for up to 200 yards. Defendant had his headlights on, yet he failed to see four boys on two bicycles at any time before the collision. There is no evidence which would suggest that the boys suddenly turned into his path.

[3] Whether deceased was contributorily negligent as a matter of law presents a more difficult question. However, the issue of contributory negligence was also for the jury unless plaintiff's own evidence so clearly established the contributory negli-gence of her intestate as one of the proximate causes of his death that no other reasonable inference could be drawn therefrom. *Jernigan v. R. R. Co.,* 275 N.C. 277, 167 S.E. 2d 269; *May v. Mitchell,* 9 N.C. App. 298, 176 S.E. 2d 3.

Defendant compares this case to the case of *Miller v. Wright,* 272 N.C. 666, 158 S.E. 2d 824. Judgment of nonsuit was affirmed in that case under facts that are in many respects similar to those involved here. There, the deceased was riding or walking beside an unlighted bicycle at night on the traveled portion of a highway. However, here, there is evidence which would permit a reasonable inference that deceased had gotten completely off the traveled portion of the roadway before the collision occurred and that he was struck on the shoulder of

the road when defendant lost control of his vehicle and permitted it to go off the road. In the *Miller* case, the collision occurred while deceased was on the paved portion of the highway. Here, if deceased was riding his bicycle, without lights, at night upon a public highway, he was guilty of negligence. G.S. 20-129 (a). Whether that negligence was a proximate cause of his death if the fatal collision in fact occurred while he was completely away from the traveled portion of the highway was a question for the jury.

Defendant strenuously argues that no inference arises that the collision occurred on the shoulder of the road. It is true that there is no direct evidence as to the precise location of deceased at the time he was struck by defendant's car. However, the circumstantial evidence, when considered in the light most favorable to the plaintiff, will support an inference that the collision occurred on the shoulder of the road. Simmons testified in answer to a question on cross-examination that "I don't know exactly where it [deceased's bicycle] was at, but it wasn't in the middle of the road." In other portions of his testimony, however, he stated repeatedly that "we" got off the pavement prior to the accident. Clearly, in many portions of his testimony he was referring to both bicycles and all four boys. The testimony of a witness who arrived at the scene shortly after the collision also supports the inference that the collision occurred on the shoulder of the road. She testified that the bicycles were in a ditch about five or six feet from the paved surface of the road. She stated that there were fresh tire marks on the shoulder of the road for four or five feet. The bicycles were right at the tire marks. Chunks of human meat were on the shoulder of the road and a leg from deceased's body was hanging on a barbed wire fence. Glass was located at the bicycles and at the tire marks. The witness testified without objection that the glass had come from the windshield of defendant's car. It appears from this evidence that all of the debris was off the paved portion of the roadway and in the vicinity of the tire marks on the shoulder of the road.

We are of the opinion and so hold that the evidence was sufficient to be considered by the jury on all issues.

Reversed.

Judges CAMPBELL and BRITT concur.