LULA MAE JONES, ADMINISTRATRIX OF THE ESTATE OF ROY LEE JONES, DECEASED, v. OZELL JOHNSON AND HIS WIFE, MARGARET PURCELL JOHNSON.

(Filed 16 June, 1966.)

**1. Automobiles § 41m—**

Evidence favorable to plaintiff which permits the inferences that defendant saw or should have seen small children near the edge of the highway, but that defendant did not reduce speed nor blow her horn or apply her brakes until after she saw plaintiff's intestate, a six year old boy, run into the highway, and that the car skidded about 150 feet before it struck the child, inflicting fatal injury, *held* sufficient to be submitted to the jury on the issue of defendant's negligence.

**2. Trial § 22—**

Discrepancies in plaintiff's evidence do not warrant nonsuit, and if diverse inferences can be drawn from the evidence, some favorable to plaintiff and others to defendant, the cause should be submitted to the jury.

MOORE, J., not sitting.

APPEAL by plaintiff from *Braswell, J.,* October Session 1965 of SCOTLAND.

This is a civil action to recover for the wrongful death of plaintiff's intestate, a six-year old boy, who was struck and killed by an automobile while crossing the highway.

The tragedy occurred about 4:45 P.M. on 18 August 1964 in front of the child's home on rural paved road No. 1338 in Scotland County, about five miles north of Laurel Hill. The automobile involved was admittedly a family purpose car owned by Ozell Johnson and was being operated by his wife, Margaret Purcell Johnson.

The plaintiff's evidence in substance is to the effect that Margaret Purcell Johnson was operating her husband's car in a southerly direction on the aforesaid highway, and as she approached the scene of the accident, the view to her left was obscured by a tomato

field in and along which the weeds were 3 to 4 feet high, and the view to her right was obscured by a pine thicket, bushes and a chinaberry tree. The road was straight and level for about one-fourth mile. The house in which plaintiff's intestate resided was obscured to a driver traveling south on the highway until the car was practically in front of the house, which was located 30 or 35 feet from the highway.

On the day of the accident the five children of plaintiff, including a baby, had been left at the Jones home in care of Thelma Johnson, a fifteen-year old girl. Thelma testified: "I remember the day that Roy Lee Jones was killed. I saw him * * * just before he was killed. He went across the road to move a tomato out of the road. When he started back across, when he got almost to the middle the car got him. * * * I was taking care of the Jones children that afternoon and was babysitting for the mother. When he went to get the tomato he was walking. But he was running when he came back across. * * * I was sitting on the porch. I heard the brakes squealing before he was hit. They were squealing loud. I didn't hear the sound when he was hit. The horn was blowing. It was not far from him when I heard the horn begin to blow. After he was hit, the car ran on in the ditch * * * on the right hand side * * *. That was the same side of the road the house was on."

On cross-examination this witness testified that there were four rooms in the house; that the baby was in the first room, "coming in from the porch," that she was in the room changing the baby's diaper, "and while I was in there changing diapers, I heard the horn blow * * * I was just laying the baby down. * * * The child was on the bed at the back of the room. * * * I was facing the back of the room and had my back to the children at that time. * * * I couldn't see them. * * * When I actually heard these brakes squeal I also heard a horn blow, while I was in the house. I did not have the baby up when I heard that. After I got through changing the diaper, I was sitting on the porch. I was sitting in the middle of the porch at the time Roy Lee was actually struck. From the time I heard the horn blow and the brakes squeal I had time to go from the room to the porch and sit down before the accident happened."

N. C. Hester, a Highway Patrolman, testified he investigated this accident; that he talked to Margaret Johnson, the driver of the car, and asked her how the accident happened. The Patrolman's evidence most favorable to the plaintiff was as follows: "She stated that she was driving south on 1338 * * * and there was a small child or small children to her left side of the road; that as she ap-

proached, one ran out into the road in the path of her automobile. She stated she was driving about 45 miles per hour." The Patrolman further testified that there were skid marks from about the middle of the right hand lane of the highway going south to the point where the automobile came to rest in the ditch on the right hand side of the highway, a distance of approximately 195 feet. The plaintiff's evidence further tends to show that the automobile traveled approximately 45 feet after the child was hit.

At the close of plaintiff's evidence the defendants interposed a motion for judgment as of nonsuit and the motion was allowed. The plaintiff appeals, assigning error.

*King & Cox for plaintiff.*
*Mason, Williamson and Etheridge for defendants.*

PER CURIAM. This is a borderline case. However, when those parts of the plaintiff's evidence most favorable to her are considered in such light, as they must be on a motion for judgment as of nonsuit, we are of the opinion the evidence is sufficient to carry the case to the jury. There is nothing in the defendant driver's statement to the investigating officer that tends to show that she decreased her speed or blew her horn when she saw a child or children on the left side of the highway. On cross-examination, the Patrolman testified that the defendant driver said she did not apply her brakes until the child ran into the highway. According to the Patrolman's testimony, the car skidded 150 feet to the point where it struck the child and continued to skid for an additional 45 feet before it came to rest in the ditch on the right side of the road.

Discrepancies and contradictions in the plaintiff's evidence are for the jury and not for the court. *Barlow v. Bus Lines,* 229 N.C. 382, 49 S.E. 2d 793.

"The rule applicable in cases of this kind is that if diverse inferences may be drawn from the evidence, some favorable to the plaintiff and others to the defendant, the case should be submitted to the jury for final determination." *Hobbs v. Mann,* 199 N.C. 532, 155 S.E. 163. The judgment as of nonsuit is

Reversed.

MOORE, J., not sitting.